## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STERLING MIRROR COMPANY, LLC | * | |
| 4375 Nicole Drive | * | |
| Lanham, Maryland 20706 | * | |
| | * | |
| Plaintiff, | * | Civil Action No. _____ |
| | * | (Jury Trial Demanded) |
| V. | * | |
| | * | |
| HAO XIAOGANG | * | |
| a/k/a STEVEN XIAOGANG a/k/a | * | |
| STEVEN HAO | * | |
| No. 246, Jinshui Avenue, Matun Town, Mengjin, | * | |
| Luoyang, Henan Province, China | * | |
| | * | |
| Defendant, | * | |
| AND | * | |
| | * | |
| LUOYANG GANGXIN GLASS | * | |
| TECHNOLOGY CO., LTD. | * | |
| No.246, Jinshui Avenue, Matun Town, Mengjin, | * | |
| Luoyang, Henan Province, China | * | |
| | * | |
| Defendant, | * | |
| | * | |
| AND | * | |
| | * | |
| JINGATO YUAN a/k/a YUAN | * | |
| No. 246, Jinshui Avenue, Matun Town, Mengjin, | * | |
| Luoyang, Henan Province, China | * | |
| | * | |
| Defendant, | * | |
| | * | |
| AND | * | |
| | * | |
| CUI ZHIVANG a/k/a CUI | * | |
| No. 246, Jinshui Avenue, Matun Town, Mengjin, | * | |
| Luoyang, Henan Province, China | * | |
| | * | |
| Defendant. | * | |
| | * | |

*********************************************************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Sterling Mirror Company, LLC (referred hereto as "Plaintiff" or "Sterling")

states by way of complaint against Defendants Hao "Steven" Xiaogang, Luoyang Gangxin Glass

Technology Co., Ltd., Jingato Yuan, and Cui Zhivan (collectively "Defendants"):

## PARTIES AND JURISDICTION

1.      Plaintiff Sterling Mirror Company, LLC ("Sterling") is a Delaware limited liability

company, and maintains its principal place of business in Lanham, Maryland.  The warehouse

facility, equipment, computer system and events of cyber extortion and fraud by Defendants took

place at 377 & 379 Log Canoe Circle, Stevensville, Maryland 21666.

2.      Defendant Hao Xiaogang a/k/a Steven Xiapgang a/k/a Steven Hao ("Steven") is,

upon information and belief, a citizen of China, who resides in Henan Province and is employed

as the General Manager of Luoyang Gangxin Glass Technology Co., Ltd. also located in China.

Upon information and belief, Steven was directly involved in the sale of the glass tempering

furnace and subsequent cyber extortion conspiracy that victimized Sterling.  Moreover, upon

information and belief, Steven was physically present within the State of Maryland, and

participated in the affirmative act of conspiring to upload software in furtherance of the cyber

extortion conspiracy targeting Sterling – subjecting himself to the jurisdiction of Maryland for

purposes of illicit monetary gain and to further the conspiracy.  Upon information and belief, all,

or some, of the acts performed by Steven herein took place within the State of Maryland.

3.      Defendant Luoyang Gangxin Glass Technology Co., Ltd. ("Gangxin") is, upon

information and belief, a business operating in China, located at No. 246, Jinshui Avenue, Matun

Town, Mengjin, Luoyang, Henan Province, China. Upon information and belief, Gangxin

manufactured the glass tempering furnace, designed the computer program used to perpetrate the

act of cyber extortion that victimized Sterling, employed all Defendants and sent all Defendants to Maryland to upload the malicious software.  Gangxin was directly involved in the sale of the glass tempering furnace, and participated in the subsequent cyber extortion conspiracy that victimized Sterling.  Moreover, upon information and belief, Gangxin sent employees including Steven, Jingato and Cui to the State of Maryland in order to upload the malicious software in furtherance of the cyber extortion conspiracy targeting Sterling – subjecting itself to the jurisdiction of Maryland for purposes of illicit monetary gain and to further the conspiracy.   Upon information and belief, all, or some, of the acts performed by Gangxin herein took place within the State of Maryland.

4.     Defendant Jingato Yuan a/k/a Yuan ("Jingato") is, upon information and belief, a citizen of China, who resides in Henan Province and is employed as a technician for Gangxin also located in China.  Upon information and belief, Jingato was directly involved in the cyber extortion conspiracy that victimized Sterling. Moreover, upon information and belief, Jingato was physically present within the State of Maryland, and participated in the affirmative act of conspiring to upload software in furtherance of the cyber extortion conspiracy targeting Sterling – subjecting himself to the jurisdiction of Maryland for purposes of illicit monetary gain and to further the conspiracy. Upon information and belief, all, or some, of the acts performed by Jingato herein took place within the State of Maryland.

5.     Defendant Cui Zhivan a/k/a Cui ("Cui") is, upon information and belief, a citizen of China, who resides in Henan Province and is employed as a technician for Gangxin also located in China.  Upon information and belief, Cui was directly involved in the cyber extortion conspiracy that victimized Sterling. Moreover, upon information and belief, Cui was physically present within the State of Maryland, and participated directly in the affirmative act of conspiring to upload

software in furtherance of the cyber extortion conspiracy targeting Sterling – subjecting himself to the jurisdiction of Maryland for purposes of illicit monetary gain and to further the conspiracy. Upon information and belief, all, or some, of the acts performed by Cui herein took place within the State of Maryland.

6.      The Court has personal jurisdiction over the parties and subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331, supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and federal question jurisdiction pursuant to 18 U.S.C. § 1030(g). Venue is proper in this Court as many of the actions complained of took place in the District of Maryland.

## FACTS RELATING TO ALL COUNTS

7.      Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 6 as if set forth fully herein.

8.      Sterling has been in the glass and mirror business for forty-two years serving Maryland, Virginia and Washington D.C.  In the early years of the business, Sterling focused on sales and installation of glass and mirrors. Approximately sixteen years ago, Sterling changed its business to focusing on selling tempered glass, and its installation, for high end shower doors and frameless shower enclosures.

9.      In 2008, Sterling began to explore acquiring a glass tempering furnace and contacted The Jordan Glass Corporation ("JGC"), a Florida company from which they had previously purchased some equipment.  From approximately 2005 through 2015, JGC was the exclusive U.S. distributor for Xinglass, a manufacturer of tempering furnaces and other glass processing equipment.

10.     After discussions with JGC, based in Miami Florida, Sterling was presented with a contract that included the glass tempering furnace, cost of shipping from China,

installation, optional spare parts and optional underwriters laboratory compliance ("UL"). The contract price with JGC was $368,880, including the optional portions which were selected by Sterling.

11.     Sterling executed the contract of sale for the glass tempering furnace in May of 2015.

12.     During July 2014, JGC coordinated an invitation for Sterling to visit a JGC customer in Port Orange, Florida to view the customer's Xinglass glass tempering furnace.

13.     In September 2015, at a trade show for the glass industry held in Atlanta, Georgia, a representative of Sterling met with a representative of JGC.  Present at the JGC booth was Steven, who introduced himself as the company engineer and whom Sterling was led to believe worked for Xinglass.  It was later learned that Steven was in fact the General Manager of Gangxin, the manufacturer of the glass tempering furnace.

14.     Sterling, JGC and Steven reviewed the layout for the furnace because Sterling was moving operations to a larger space.  During this meeting, there was no mention that the glass tempering furnace manufacturer had been changed from Xinglass to Gangxin.   In addition, JGC had never worked with Gangxin in the past, despite representations to the contrary.

15.     On March 26, 2016, JGC delivered the glass tempering furnace to Sterling's new facility located at 377 Log Canoe Circle, Stevensville, Maryland.  Installation of the furnace began on August 10, 2016.

16.     From the day the furnace arrived in Maryland, at no time since it was installed has the furnace produced commercially acceptable tempered glass. The consequences for

Sterling of the failed equipment are a significant loss of time and hours expended by its employees, great expense incurred and substantial loss of profits.

17.     As Sterling learned during the installation process, the furnace was manufactured by Gangxin, a Chinese company which JGC had not worked with before, and was not the same company that manufactured the furnace Sterling was invited to view in Port Orange, Florida.  Upon information and belief, JGC had not inspected any operable furnaces made by Gangxin prior to the sale to Sterling.  In fact, prior to the sale of the furnace to Sterling, Gangxin had not sold and/or installed any of its furnaces anywhere in the United States.

18.     Although pursuant to the Furnace Contract representatives from JGC were to handle the installation which was to take 3-4 weeks, they were at Sterling's facility for the first few days of the installation and left the work to the technicians from Gangxin. As a result, Sterling had to hire a person with mechanical expertise to assist with the installation at its own cost.

19.     The Gangxin glass tempering furnace required a computer to operate.  Gangxin provided a computer that ran on a Windows XP operating system and contained several computer programs that were essential to the process of tempering the glass (e.g., controlling the time and heat), reflected in the pictures below:



| Front interface of the furnace computer. | Back of the furnace computer, with the added Linksys wi-fi USB stick. |

      20.     Upon information and belief, unbeknownst to Sterling – and without its permission, authorization or consent – Defendants installed several malicious computer programs on the glass tempering furnace hard-drive, while they were allegedly "repairing" the glass tempering furnace. Upon information and belief, Defendants used USB hard-drives and a wi-fi USB stick and Sterling's wireless password protected internet router to deliver the malicious software code that ultimately crippled the furnace.  Upon information and belief, Defendants installed these computer programs as a tool to extort the final payment of approximately $56,589.78 and future payments from Sterling, as it was becoming apparent that the furnace was so poorly constructed that it would never work to produce commercially acceptable glass.

      21.     Upon information and belief, the most damaging and malicious of the computer programs installed by Defendants (without the knowledge, permission, authority or consent of Sterling) was a time delayed cyber extortion program that locked the furnace's computer system and prevented Sterling from operating the furnace unless a "code" was entered.  If the proper "code" was provided by Defendants and entered by Sterling and transmitted *via* Sterling's internet connection to Defendants, Defendants would (in turn) unlock the computer operating system *via*

the internet connection.  At this point Sterling would be free to operate the glass tempering furnace computer for a limited period of time, but the amount of time and access was always controlled by Defendants.  The icon for this "code" mimicked a software license key prompt and was designed to deceive the end-user so as not to draw attention to what it truly was – malware designed to hold the owner of the equipment hostage.  The following images depict what Sterling saw when it attempted to run the furnace once the malware was installed:






22.     Upon information and belief, Sterling recently came to learn that Defendants uploaded and/or modified this malware "GXglass.exe." computer program without the knowledge, permission, authority or consent of Sterling on or about: September 13, 2016; November 11, 2016; December 13, 2016; December 19-20, 2017; January 19-26, 2018; and April 10-13, 2018. Notably, upon information and belief, Defendants were not in the State of Maryland on December 13, 2016, yet the software was uploaded and/or modified onto the glass tempering furnace's computer system.  Hence, upon information and belief, in December of 2016, Defendants must have used the internet and Sterling's wireless (wi-fi) signal to upload and/or modify the malware.

23.     Despite the enormous expense incurred by Sterling and efforts made to have the equipment function properly, from September 2016 through early January 2017, the glass tempering furnace did not produce commercially acceptable glass which Sterling could sell to its customers, as primarily the glass contained lines and scratches that did not comply with industry standards.

24.     After contacting Steven to advise him of these issues, he sent a technician, Jingato, from China who arrived on January 17, 2017 and spent two weeks allegedly attempting to fix the glass tempering furnace.  Steven himself then came to Sterling's manufacturing facility to allegedly work on the glass tempering furnace, and he too was unable to resolve the issues.

25.      Subsequent to all of these efforts to correct items that should have been properly manufactured in the first instance, on February 17, 2017, as the day progressed the quality of the glass declined to the point that the glass was showing deep scratches (mechanical damages to the furnace); the glass not commercially acceptable.

26.     Discussing the matter with Steven that afternoon, Steven announced he was leaving and going back to China, even though he was supposed to stay another week.  On about February 18, 2017, Steven returned to China.

27.     Sterling continued to test the furnace.  While the range of issues with the pieces of glass runs to test the furnace varied, none were without defect and they were not commercially acceptable.  Soon after Steven left, the furnace was rendered inoperable again by the malware installed by Defendants.

28.     As a result of the malware requiring a "code," Sterling has been unable to use the furnace since November 2016.  The computer system that runs the furnace has been rendered inoperable, ***reducing the furnace to a twenty-ton paperweight*** taking up valuable space in the manufacturing facility.  In addition to the loss of the purchase price for the furnace, Sterling has lost approximately $150,000.00 dollars a month, starting in September of 2016, in lost profits because it is unable to produce commercially acceptable tempered glass, and has total damages arising out of Defendants' conduct in the amount of $6,000,000.00.

## CAUSES OF ACTION

### COUNT I
### (Violations of Computer Fraud and Abuse Act - CFAA)

29.     Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 28 as if set forth fully herein.

30.     The Federal Computer Fraud and Abuse Act ("CFAA"), makes it a crime, *inter alia*, to (a) intentionally access a computer without authorization or to exceed authorized access, and thereby obtain "information from any protected computer if the conduct involved an interstate or foreign communication;" (b) knowingly and with intent to defraud, access a protected computer without authorization or to exceed authorized access, and by means of such conduct further the

intended fraud and obtain anything of value; and (c) "intentionally access[ ] a protected computer without authorization, and as a result of such conduct," recklessly or intentionally cause damage. 18 U.S.C. § 1030(3)(c), (a)(4) and (a)(5)(A)(ii) and (iii).   Sterling's furnace computer was a "protected computer" within the meaning of the CFAA.

31.     18 U.S.C. § 1030(g) expressly provides victims of such conduct with a private right of action: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

32.     Upon information and belief, Defendants intentionally accessed (without the knowledge, permission, authority or consent of Sterling) the glass tempering furnace computer system, which is a computer as defined in 47 U.S.C. § 1030(e)(1).

33.     Upon information and belief, Defendants uploaded and/or modified the malicious "GXglass.exe." computer program without the knowledge, permission, authority or consent of Sterling on or about: September 13, 2016; November 11, 2016; December 13, 2016; December 19-20, 2017; January 19-26, 2018; and April 10-13, 2018.   Notably, upon information and belief, Defendants were not in the State of Maryland on December 13, 2016, yet the software was uploaded onto the glass tempering furnace's computer system.   Hence, upon information and belief, in December of 2016, Defendants must have used the internet and Sterling's wireless (wi-fi) signal to upload and/or modify the malware.

34.     Upon information and belief, Defendants installed these malicious computer programs as a tool to extort the final payment of approximately $56,589.78 from Sterling and future payments, as it was becoming apparent that the glass tempering furnace was so poorly constructed that it would never work.

35.     The intentional and unauthorized access of the computer system took place from locations within the jurisdiction of Maryland.  Through such unauthorized access, Defendants damaged a protected computer belonging to Sterling that operated the glass tempering furnace, and effectively disabled the furnace, which is used in interstate and/or foreign commerce.

36.     Through such unauthorized access, Sterling has suffered and will continue to suffer impairment to the integrity of its data, programs, systems or information, deprived of the use of the glass tempering furnace, including economic damages, and loss aggregating substantially more than $5,000 during a one-year period, and has total damages arising out of Defendants' conduct in the amount of $6,000,000.00.

WHEREFORE, Plaintiff Sterling demands the entry of judgment in its favor and against Defendants in the amount of $6,000,000.00, injunctive relief in the form of an order directing and requiring Defendants to remove the malicious code from the computer, compensatory damages, punitive damages, reasonable attorney's fees, interest, and such other relief as the Court deems just.

## COUNT II
## (VIOLATION OF CFAA, 18 U.S.C. § 1030 (a)(4))

37.     Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 36 as if set forth fully herein.

38.     18 U.S.C. § 1030(a)(4) prohibits, in relevant part:

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such ***conduct furthers the intended fraud*** and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period… (emphasis added)

39.     Upon information and belief, Defendants intentionally accessed (without the knowledge, permission, authority or consent of Sterling) the glass tempering furnace computer, which is a computer as defined in 47 U.S.C. § 1030(e)(1), for the purpose of installing malicious computer programs as a tool to fraudulently extort the final payment of approximately $56,589.78 from Sterling and future payments, as it was apparent to Defendants that the glass tempering furnace was so poorly constructed that it would never work, and understood that the furnace was part of a larger fraudulent scheme of "bait and switch" targeting Sterling as the unwitting victim, in violation of 18 U.S.C. § 1030(a)(4).

40.     Upon information and belief, Defendants uploaded and/or modified the malicious "GXglass.exe." computer program without the knowledge, permission, authority or consent of Sterling on or about: September 13, 2016; November 11, 2016; December 13, 2016; December 19-20, 2017; January 19-26, 2018; and April 10-13, 2018.  Notably, upon information and belief, Defendants were not in the State of Maryland on December 13, 2016, yet the software was uploaded onto the glass tempering furnace's computer system.  Hence, upon information and belief, in December of 2016, Defendants must have used the internet and Sterling's wireless (wi-fi) signal to upload and/or modify the malware, and transmitted a program, code and/or command to Sterling's protected computer intentionally causing damages in violation of 18 U.S.C. § 1030(a)(5)(C).

41.     The intentional and unauthorized access of the computer system took place from locations within the jurisdiction of Maryland, and transmitted, via Sterling's wi-fi connection to the internet, from other jurisdictions.   Through such unauthorized access, Defendants damaged a protected computer belonging to Sterling that operated the glass tempering furnace, and effectively disabled the furnace, which is used in interstate and/or foreign commerce.

42.     Through such unauthorized access, Sterling has suffered and will continue to suffer impairment to the integrity of its data, programs, systems or information, deprived of the use of the glass tempering furnace, including economic damages, and loss aggregating substantially more than $5,000 during a one-year period, and has total damages arising out of Defendants' conduct in the amount of $6,000,000.00.

WHEREFORE, Plaintiff Sterling demands the entry of judgment in its favor and against Defendants in the amount of $6,000,000.00, injunctive relief in the form of an order directing and requiring Defendants to remove the malicious code from the computer, compensatory damages, punitive damages, reasonable attorney's fees, interest, and such other relief as the Court deems just.

## COUNT III
## (VIOLATION OF CFAA, 18 U.S.C. § 1030 (a)(5)(A))

43.     Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 42 as if set forth fully herein.

44.     18 U.S.C. § 1030(a)(5)(A) prohibits, in relevant part:

> …knowingly causes **_the transmission of a program, information, code, or command_**, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer… (emphasis added)

45.     Upon information and belief, Defendants intentionally accessed (without the knowledge, permission, authority or consent of Sterling) the glass tempering furnace computer, which is a computer as defined in 47 U.S.C. § 1030(e)(1), for the purpose of installing malicious computer programs as a tool to fraudulently extort the final payment of approximately $56,589.78 from Sterling and future payments, as it was apparent to Defendants that the glass tempering furnace was so poorly constructed that it would never work, and understood that the furnace was

part of a larger fraudulent scheme of "bait and switch" targeting Sterling as the unwitting victim, in violation of 18 U.S.C. § 1030(a)(4).

46.     Upon information and belief, Defendants uploaded and/or modified the malicious "GXglass.exe." computer program without the knowledge, permission, authority or consent of Sterling on or about: September 13, 2016; November 11, 2016; December 13, 2016; December 19-20, 2017; January 19-26, 2018; and April 10-13, 2018.   Notably, upon information and belief, Defendants were not in the State of Maryland on December 13, 2016, yet the software was uploaded onto the glass tempering furnace's computer system.   Hence, upon information and belief, in December of 2016, Defendants must have used the internet and Sterling's wireless (wi-fi) signal to upload and/or modify the malware, and ***transmitted*** a program, code and/or command to Sterling's protected computer, in violation of 18 U.S.C. § 1030(a)(5)(A), intentionally causing damages.

47.     The intentional and unauthorized access of the computer system took place from locations within the jurisdiction of Maryland, and transmitted, via Sterling's wi-fi connection to the internet, from other jurisdictions.   Through such unauthorized access, Defendants damaged a protected computer belonging to Sterling that operated the glass tempering furnace, and effectively disabled the furnace, which is used in interstate and/or foreign commerce.

48.     Through such unauthorized access, Sterling has suffered and will continue to suffer impairment to the integrity of its data, programs, systems or information, deprived of the use of the glass tempering furnace, including economic damages, and loss aggregating substantially more than $5,000 during a one-year period, and has total damages arising out of Defendants' conduct in the amount of $6,000,000.00.

WHEREFORE, Plaintiff Sterling demands the entry of judgment in its favor and against Defendants in the amount of $6,000,000.00, injunctive relief in the form of an order directing and requiring Defendants to remove the malicious code from the computer, compensatory damages, punitive damages, reasonable attorney's fees, interest, and such other relief as the Court deems just.

## COUNT IV
### (VIOLATION OF CFAA, 18 U.S.C. § 1030 (a)(5)(C))

49.     Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 48 as if set forth fully herein.

50.     18 U.S.C. § 1030(a)(5)(C) prohibits, in relevant part:

> … intentionally accesses[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss…

51.     Upon information and belief, Defendants intentionally accessed (without the knowledge, permission, authority or consent of Sterling) the glass tempering furnace computer, which is a computer as defined in 47 U.S.C. § 1030(e)(1), for the purpose of installing malicious computer programs as a tool to extort the final payment of approximately $56,589.78 from Sterling and future payments, as it was apparent to Defendants that the glass tempering furnace was so poorly constructed that it would never work.

52.     Upon information and belief, Defendants uploaded and/or modified the malicious "GXglass.exe." computer program without the knowledge, permission, authority or consent of Sterling on or about: September 13, 2016; November 11, 2016; December 13, 2016; December 19-20, 2017; January 19-26, 2018; and April 10-13, 2018.   Notably, upon information and belief, Defendants were not in the State of Maryland on December 13, 2016, yet the software was uploaded onto the glass tempering furnace's computer system.   Hence, upon information and

belief, in December of 2016, Defendants must have used the internet and Sterling's wireless (wi-fi) signal to upload and/or modify the malware, and transmitted a program, code and/or command to Sterling's protected computer intentionally causing damages in violation of 18 U.S.C. § 1030(a)(5)(C).

53.     The intentional and unauthorized access of the computer system took place from locations within the jurisdiction of Maryland, and transmitted, via Sterling's wi-fi connection to the internet, from other jurisdictions.   Through such unauthorized access, Defendants damaged a protected computer belonging to Sterling that operated the glass tempering furnace, and effectively disabled the furnace, which is used in interstate and/or foreign commerce.

54.     Through such unauthorized access, Sterling has suffered and will continue to suffer impairment to the integrity of its data, programs, systems or information, deprived of the use of the glass tempering furnace, including economic damages, and loss aggregating substantially more than $5,000 during a one-year period, and has total damages arising out of Defendants' conduct in the amount of $6,000,000.00.

WHEREFORE, Plaintiff Sterling demands the entry of judgment in its favor and against Defendants in the amount of $6,000,000.00, injunctive relief in the form of an order directing and requiring Defendants to remove the malicious code from the computer, compensatory damages, punitive damages, reasonable attorney's fees, interest, and such other relief as the Court deems just.

## COUNT V
## (VIOLATION OF CFAA, 18 U.S.C. § 1030(b)-CONSPIRACY)

55.     Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 54 as if set forth fully herein.

56.     18 U.S.C. § 1030(b) prohibits, in relevant part:

> Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

57.     Upon information and belief, Defendants and others (who have yet to be identified) have acted in combination with each other to further a conspiracy against Sterling.

58.     In particular, Defendants and others, upon information and belief, have committed the following acts, in addition to the wrongful acts described herein, in furtherance of the conspiracy: (a) Defendants and others have, upon information and belief, contrived a plan and acted in concert to disrupt the business operations of Sterling and the use of the glass tempering furnace; (b) Defendants others have, upon information and belief, contrived a plan and acted in concert to load and/or modify malicious software on to the computer that operates the glass tempering furnace, without permission or authority, damaging Sterling, to extort payment from Sterling for the benefit of Defendants; (c) Defendants and others have, upon information and belief, acted in concert to sabotage Sterling's ability to perform its existing contractual obligations and to pursue new work with clients; (d) Defendants and others have, upon information and belief, acted in concert with others in performing some or all of the wrongful acts alleged in this Complaint hereinabove; and/or (e) other acts that may be discovered during these proceedings.

59.     The purpose of this conspiracy was to injure Sterling, and to extort payment from Sterling in order to benefit Defendants.

60.     Through this conspiracy, Sterling has suffered and will continue to suffer impairment to the integrity of its data, programs, systems or information, deprived of the use of the glass tempering furnace, including economic damages, and loss aggregating substantially more than $5,000 during a one-year period, and has total damages arising out of Defendants' conduct in the amount of $6,000,000.00.

WHEREFORE, Plaintiff Sterling demands the entry of judgment in its favor and against Defendants in the amount of $6,000,000.00, injunctive relief in the form of an order directing and requiring Defendants to remove the malicious code from the computer, compensatory damages, punitive damages, reasonable attorney's fees, interest, and such other relief as the Court deems just.

## COUNT VI
### (TRESSPASS TO CHATTELS-MARYLAND)

61.     Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 60 as if set forth fully herein.

62.     Upon information and belief, Defendants intentionally accessed (without the knowledge, permission, authority or consent of Sterling) the glass tempering furnace computer for the purpose of installing malicious computer programs that would disable the furnace unless a code was provided.  Defendants intentionally installed the malicious computer programs as a tool to fraudulently extort the final payment of approximately $56,589.78 from Sterling and future payments.

63.     Upon information and belief, Defendants intentionally uploaded and/or modified the malicious "GXglass.exe." computer program without the knowledge, permission, authority or consent of Sterling on or about: September 13, 2016; November 11, 2016; December 13, 2016; December 19-20, 2017; January 19-26, 2018; and April 10-13, 2018.

64.     Through such unauthorized access to the computer, Defendants intentionally damaged a computer belonging to Sterling that operated the glass tempering furnace, and effectively disabled the furnace, thereby interfering with the use and possession by Sterling of its glass tempering furnace.

65.     Through such unauthorized access, Sterling has suffered and will continue to suffer impairment to the integrity of its data, programs, systems or information, deprived of the use of the glass tempering furnace, including economic damages, and has total damages arising out of Defendants' conduct in the amount of $6,000,000.00.

WHEREFORE, Plaintiff Sterling demands the entry of judgment in its favor and against Defendants in the amount of $6,000,000.00, injunctive relief in the form of an order directing and requiring Defendants to remove the malicious code from the computer, compensatory damages, punitive damages, reasonable attorney's fees, interest, and such other relief as the Court deems just.

**COUNT VII**
**(TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE - MARYLAND)**

66.     Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 65 as if set forth fully herein.

67.     Upon information and belief, Defendants intentionally accessed (without the knowledge, permission, authority or consent of Sterling) the glass tempering furnace computer for the purpose of installing and/or modifying malicious computer programs that would disable the furnace unless a code was provided.  Defendants intentionally installed and/or modified the malicious computer programs as a tool to fraudulently extort the final payment of approximately $56,589.78 from Sterling and future payments, and intentionally cause damage to Sterling.

68.     Upon information and belief, Defendants intentionally uploaded and/or modified the malicious "GXglass.exe." computer program without the knowledge, permission, authority or consent of Sterling on or about: September 13, 2016; November 11, 2016; December 13, 2016; December 19-20, 2017; January 19-26, 2018; and April 10-13, 2018.

69.     Through such unauthorized access to the computer, Defendants intentionally damaged the furnace computer – effectively disabling the furnace – which was calculated to cause damage to Sterling in their lawful business of selling tempered glass.   Defendants executed this scheme for the unlawful purpose of causing damage and loss without right, justifiable cause on the part of Defendants.

70.     Through such unauthorized access, Sterling has suffered and will continue to suffer impairment to the integrity of its data, programs, systems or information, deprived of the use of the glass tempering furnace, which caused a substantial loss of business and potential business to Sterling, which includes economic damages, and has total damages arising out of Defendants' conduct in the amount of $6,000,000.00.

WHEREFORE, Plaintiff Sterling demands the entry of judgment in its favor and against Defendants in the amount of $6,000,000.00, injunctive relief in the form of an order directing and requiring Defendants to remove the malicious code from the computer, compensatory damages, punitive damages, reasonable attorney's fees, interest, and such other relief as the Court deems just.

## COUNT VIII
## (CIVIL CONSPIRACY-MARYLAND)

71.     Sterling repeats and incorporates by reference the allegations in paragraphs 1 through 70 as if set forth fully herein.

72.     Upon information and belief, Defendants and others (who have yet to be identified) have acted in combination with each other to further a conspiracy against Sterling.

73.     In particular, Defendants and others, upon information and belief, have committed the following acts, in addition to the wrongful acts described herein, in furtherance of the conspiracy: (a) Defendants and others have, upon information and belief, contrived a plan and

acted in concert to disrupt the business operations of Sterling and the use of the glass tempering furnace; (b) Defendants others have, upon information and belief, contrived a plan and acted in concert to load and/or modify malicious software on to the computer that operates the glass tempering furnace, without permission or authority, damaging Sterling, to extort payment from Sterling for the benefit of Defendants; (c) Defendants and others have, upon information and belief, acted in concert to sabotage Sterling's ability to perform its existing contractual obligations and to pursue new work with clients; (d) Defendants and others have, upon information and belief, acted in concert with others in performing some or all of the wrongful acts alleged in this Complaint hereinabove; and/or (e) other acts that may be discovered during these proceedings.

74.     The purpose of this conspiracy was to injure Sterling, and to extort payment from Sterling in order to benefit Defendants.

75.     Sterling has suffered special damages, actual damages and economic losses in excess of $6,000,000.00 as a direct and proximate result of the aforesaid conspiracy and is entitled to recover such damages against Defendants and others who have yet to be identified.

WHEREFORE, Plaintiff Sterling demands the entry of judgment in its favor and against Defendants in the amount of $6,000,000.00, injunctive relief in the form of an order directing and requiring Defendants to remove the malicious code from the computer, special and compensatory damages, punitive damages, reasonable attorney's fees and costs incurred, interest, and such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff, Sterling Mirror Company, LLC demands a trial by jury in this case on all issues so triable.

Date:      September 11, 2019                    Respectfully submitted,

/s/ *Matthew A.S. Esworthy*
Matthew A.S. Esworthy (Fed. Bar No. 27032)
BOWIE & JENSEN, LLC.
210 W. Pennsylvania Avenue,
Suite 400
Towson, Maryland  21204
(410) 583-2400
(410) 583-2437 (Facsimile)
Esworthy@bowie-jensen.com
*Attorneys for Plaintiff*